THE PEOPLE OF THE STATE OF NEW YORK ex rel. NATHAN A. SMYTH, Respondent, v. THOMAS M. LYNCH et al., Constituting the STATE TAX COMMISSION, Appellants.

(Argued October 8, 1930; decided November 18, 1930.)

*Hamilton Ward*, *Attorney-General* (*W. Earl Smith* of counsel), for appellants. The sums which were received by the relator were not dividends but were compensation for personal services rendered in the State of New York and, therefore, constituted income taxable under the laws of New York. (*Mobile, etc., R. R. Co.* v. *Tennessee*, 153 U. S. 486; *Hyatt* v. *Allen*, 56 N. Y. 553; *People ex rel. Pullman Co.* v. *Glynn*, 130 App. Div. 332; *Jones* v. *Terre Haute, etc., R. R. Co.*, 57 N. Y. 196; *Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162; *Hughes* v. *Vermont Copper Min. Co.*, 72 N. Y. 207; *Warren* v. *King*, 108 U. S. 389.) The sum of $20,000 was received by relator from the corporation and not from the United States government.

The corporate entity cannot be disregarded. (*Oregon Ry. & Navigation Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1; *Donoghue* v. *I. & L. M. Ry. Co.*, 87 Mich. 13; *England* v. *Dearborn*, 141 Mass. 590; *United States* v. *Milwaukee Ref. Trans. Co.*, 142 Fed. Rep. 247; *Farmers Loan & Trust Co.* v. *Pierson*, 222 N. Y. Supp. 532; *Ross* v. *Jacobowitz*, 216 App. Div. 184; *Buffalo Loan Co.* v. *Medina Gas Co.*, 162 N. Y. 67; *Palmer* v. *Ring*, 113 App. Div. 643; *Coal Belt Co.* v. *Peabody Coal Co.*, 230 Ill. 164; *Ulmer* v. *Lime Rock R. R. Co.*, 98 Me. 579; *Old Dominion Copper Co.* v. *Bigelow*, 203 Mass. 159.)

*Bruce R. Tuttle* for respondent.

CARDOZO, Ch. J.   The controversy is one as to the amount due from the relator for a tax upon income, and the determination hinges upon the answer to the question whether the income was received as dividends or as salary.

On December 14, 1922, an agreement was made between the United States Shipping Board, described as owner, and United States P. & I. Agency, Inc., a Delaware corporation, described as agent, whereby the latter corporation was appointed the agent of the owner to investigate claims against the owner or its vessels, to negotiate settlements, to assist in preparations for trial, to keep suitable statistics, to maintain an office and an adequate staff in the city of New York for the conduct of its business, and to employ and direct the activities of such field agents in this country and abroad as the owner might direct or authorize.

The agent, in accepting the appointment, agreed to furnish at its own cost the services of its president, its vice-president, a manager of the cargo claims department, a manager of the personal injury claims department, a manager of the investigation department, and its secretary and treasurer.

The owner agreed to pay to the agent a fixed fee of

$65,000 a year for which the agent was to furnish without further cost to the owner the services of the officers above enumerated. The owner was also to pay such additional amount as might be necessary to meet the expenses incurred by the agent in the performance of its services other than the expenses specifically assumed. If at the end of any calendar year there was any unexpended balance of the fixed fee, such balance was to be accounted for and paid back by the agent to the owner.

The agent was to deposit with the treasurer of the United States Shipping Board Emergency Fleet Corporation certificates for all its authorized capital stock, duly indorsed in blank, such stock to be delivered to and become the property of the owner in the event of service of notice by the owner of termination of the agency or upon the resignation, withdrawal or other separation from the agency of the president then in office.

Accompanying the agreement and forming part of it was a letter from the agent's president, the relator in this proceeding, expressing his understanding that his personal compensation to be received through the corporation directly or indirectly was to be an amount not to exceed $20,000 a year.

The corporation was formed with an authorized capital stock of a hundred shares of no par value. These shares were issued by the corporation to the relator in consideration of his services in procuring the agency contract. Forty of the hundred shares were transferred by the relator to his wife, but he admits that the beneficial ownership is his. The board of directors, composed of the relator and his secretary, voted salaries for the services of all the officers and managers to be employed under the contract except only the president. For him they provided that there should be a drawing account payable to the stockholders (*i. e.*, to himself and his wife, who held her shares for his use) in the sum of $20,000. If dividends were thereafter declared, the

moneys drawn from this account were to be charged against the dividends.

The surplus for the year 1923 out of the fixed fee of $65,000, after deducting the expenses other than the petitioner's compensation, was $26,000. From this the petitioner received $20,000. The balance, after deducting the Federal income tax, was paid to the owner. The surplus for 1924 was about $23,000, which, after the payment of the Federal tax, left a little less than $20,000 for the services of the president.

The relator, who is a non-resident, made his return to the State Tax Commission for income during the years 1923 and 1924 upon the basis of a right to exclude therefrom the moneys received from the agent corporation. The services rendered by the relator were rendered in this State. If what was paid to him was salary, it is income subject to a tax. If what was paid was dividends, the income is exempt (Tax Law; Cons. Laws, ch. 60, § 359, subd. 3).

The State Tax Commission held that the payments, though characterized as income, were in truth compensation or salary for personal services. The Appellate Division reversed by a divided court, annulled the determination of the Commission and remitted the tax. Upon appeal by the Commission, the case is now here.

We think the payment in its substance was not a dividend, but a salary.

The relator was the organizer of the corporation and except in name its only stockholder. Whatever agreement he made as to the form of his compensation was made in substance with himself. The entire income of the corporation, so far as the record shows, was the fixed fee of $65,000 payable by the Shipping Board. By his agreement with the Board no part of this fee in excess of $20,000 was to be used directly or indirectly as compensation for his personal services, and any part remaining after paying for those services and the other expenses of the agency was to be paid back to the Board at the

end of the calendar year. Very plainly, therefore, the relator understood that what he was to get out of the fee was not a dividend upon his shares, but a payment for his work. To have kept it for any other purpose would have been a breach of his own engagement as well as that of his employer. Board and agent had agreed that what was left after expenses was to be returned to its source, and not distributed as dividends.

Everything that followed confirms this understanding. The relator, in full control of the corporation, established for himself a drawing account whereby he drew upon the corporate treasury at the rate of $20,000 a year, whether dividends were declared or not. If in any calendar year the form of a declared dividend had been omitted, the relator would still have kept this money, and kept it in payment of his services, for under his contract with the Board he could not have it for anything else. We think the Tax Commission did not err in going behind names to realities and testing the transaction by its substance rather than by its form.

The relator makes the point that if the form of a dividend be rejected, the compensation is to be viewed as salary paid by the Shipping Board, an agency of the Federal government, and so exempt upon that ground. We think the claimed exemption must be held to be unreal. The relator was not employed by the Board. He was employed by the agency, an independent corporation, which the Board carefully interposed between itself and the human agents by whom the work was to be done. The corporation undertook to furnish at its own expense the services of enumerated officers and managers in addition to the president. If the services of those officers and managers had used up the fixed fee of $65.000, and left nothing for the president, he would have had no claim against the Board for the payment of a dollar. He would have had to look to the corporation for compensation or indemnity. His relation to the Board in

that regard was not different from that of any other agent employed by the corporation in the business of the agency. For one and all, the employer was the corporation, created for the very purpose of supplying an insulating medium that would break the line of contact between the agents and the government. The fee contributed by the government was, when received by the corporation, a fund available for salaries and for the expenses of the business generally. It did not turn the officers and managers in the service of the corporation into officers and managers in the service of the government.

The order of the Appellate Division should be reversed, and the determination of the State Tax Commission confirmed, with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.